PULLMAN SOUTHERN CAR CO. *v.* NOLAN, Comptroller. (No. 2,592.)

SAME *v.* MONTGOMERY Co. and others. (No. 2,591.)

STATE OF TENNESSEE *v.* PULLMAN SOUTHERN CAR CO. (No. 2,679.)

*(Circuit Court, M. D. Tennessee.   October, 1884.)*

1. SLEEPING-CAR COMPANY—PRIVILEGE TAX.
   The act of the Tennessee legislature, passed March 16, 1877, declaring the mode and manner of valuing the property of telegraph companies for taxation, and of taxing sleeping cars, imposes upon sleeping-car companies what is known to the constitution and laws of that state as a privilege tax. It is not a property tax based on value, but an arbitrary charge, fixed by the legislature, without regard to the actual or comparative value of the article which is the basis of the tax.

2. PRIVILEGE TAX.

Under the constitution of Tennessee, as construed by the supreme court of that state, a privilege is the exercise of an occupation or business which requires a license from some proper authority, designated by some general law, and not free to all, or any, without such license. The right, therefore, of the legislature of that state to declare an occupation or business a privilege must depend upon the right of the state to prohibit it altogether.

3. CONSTITUTIONAL LAW—INTERSTATE COMMERCE.

The interstate transportation of passengers is beyond the reach of a state legislature, and, therefore, the legislature of Tennessee has no power to impose upon the Pullman Southern Car Company a privilege tax of $75 per annum for running or using sleeping cars in the transportation of interstate passengers, notwithstanding such cars may enter or cross the territory of that state.

4. INTERSTATE COMMERCE.

The cars used by the Pullman Southern Car Company are vehicles of transportation, and their use in receiving and delivering travelers at points widely separated is commerce.

5. SAME—TAXABLE SITUS.

The Pullman Southern Car Company, a corporation of Kentucky, has no domicile in Tennessee, and is not personally subject to its jurisdiction for purposes of taxation. The sleeping cars which it runs upon the railroads of Tennessee, in the transportation of interstate passengers, have no taxable *situs* within that state. They are not brought into the state for the purpose of being employed in a business carried on within it. They are in the state only as passing to and from it while in the act of transportation, performed by virtue of a right secured to the owner of them, not by the authority of the laws of Tennessee, but by virtue of a right secured by the exclusive jurisdiction of congress under the constitution.

At Law.

*O. A. Lochrane* and *Ed. Baxter,* for Pullman Southern Car Company.

*T. E. Matthews,* for Comptroller Nolan and Davidson county.

*Lanier & Dodd,* for Davidson county.

*W. A. Quarles,* for Montgomery county and others.

*Head & Champion,* for the state of Tennessee.

MATTHEWS, Justice. The first of these cases is an action at law to recover back an amount alleged to have been illegally exacted as taxes, a statute of the state authorizing such a suit, and the plaintiff being a citizen of Kentucky. It is submitted for decision upon a general demurrer to the declaration. The second is a bill in equity, the object of which is to perpetually enjoin the defendants, the counties of Montgomery, Stewart, Houston, Robertson, Sumner, and Davidson, from collecting taxes, which they assert the right to collect, of the same description as those involved in the action against the comptroller. The third suit is a bill in equity, filed by the state of Tennessee, seeking to compel a discovery from the defendant of the number of cars used by it, claimed to be subject to the tax in question, and to recover and to collect the amount of tax due thereon. This suit was commenced in the chancery court of Davidson county, but was removed into this court on the application of the defendant. All three cases involve and depend upon a single question.

The constitution of Tennessee (article 2, § 28) provides that "all property, real, personal, or mixed, shall be taxed, but the legislature

may except such as may be held by the state, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational; and shall except one thousand ($1,000) dollars worth of personal property in the hands of each taxpayer and the direct product of the soil in the hands of the producer and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value. But the legislature shall have power to tax merchants, peddlers, and privileges in such manner as they may from time to time direct." That constitution also provides (article 2, § 29) that "the general assembly shall have power to authorize the several counties and incorporated towns in this state to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law, and all property shall be taxed according to its value upon the principles established in regard to state taxation."

On March 16, 1877, the general assembly of Tennessee passed an act entitled, "An act declaring the mode and manner of valuing the property of telegraph companies for taxation, and of taxing sleeping cars," the sixth section of which is as follows:

"That the running and using of sleeping cars or coaches on railroads in Tennessee not-owned by the railroads upon which they are run or used is declared to be a privilege, and the companies owning and running or using said cars or coaches are required to report on or before the first of May of each year to the comptroller the number of cars so used by them in this state; and they shall be required to pay to the comptroller by the first of July following $50 for each and every one of said cars or coaches used or so run over said roads; and if the said privilege tax herein assessed be not paid, as aforesaid, the comptroller shall enforce the collection of the same by distress warrant."

The Pullman Southern Car Company is a corporation created by the laws of Kentucky, with its principal office and place of business in Louisville, in that state. It manufactures sleeping cars and drawing-room coaches, and furnishes them to railroads, under contracts for that purpose, retaining the ownership and receiving compensation by the sale of tickets to passengers desiring such accommodations. It has such arrangements with various railroads in Tennessee, on and over whose roads its cars are run and used, in carrying passengers into the state from points out of it, and out of the state from points within it, and across the state between points in other states, as well as between points wholly within it. Two only of such cars are used exclusively for carrying passengers between points wholly within the state, and as to them no question is made. In respect to all others it is claimed that the tax is invalid, as a regulation of interstate commerce, the exclusive right to regulate which is expressly confided by the constitution to the congress of the United

States. The tax, it is not denied, is what is known to the constitution and laws of Tennessee as a privilege tax. It is not a property tax, for, by the terms of the state constitution, that must be based on value; whereas, this is an arbitrary charge fixed by the legislature itself, without regard to the actual or comparative value of the article which is the basis of the tax.

A reference to repeated decisions of the supreme court of Tennessee leaves no room to doubt what constitutes a "privilege" as a subject of taxation, under the constitution and laws of that state. "The first legislature, after the formation of the constitution," said that court in *French* v. *Baker*, 4 Sneed, 193, "acted upon the idea that every occupation which was not open to every citizen, but could only be exercised by a license from some constituted authority, was a privilege. And it is presumed that this is a correct definition of the term." In *Mayor of Columbia* v. *Guest*, 3 Head, 414, the keeping of a livery-stable was held not to be a privilege, because the legislature had not so declared it. "A privilege," said the court, in *Jenkins* v. *Ewin*, 8 Heisk. 456, "is the exercise of an occupation or business which requires a license from some proper authority, designated by some general law, and not free to all, or any, without such license." "There is a clear distinction recognized," says the supreme court of Georgia, in *Home Ins. Co.* v. *Augusta*, 50 Ga. 530, "between a license granted or required as a condition precedent before a certain thing can be done and a tax assessed on the business which that license may authorize one to engage in. A license is a right granted by some competent authority to do an act which, without such authority, would be illegal. A tax is a rate or sum of money assessed upon the person, property, business, or occupation of the citizen." And this privilege, it is said by counsel for the state in argument, has been repeatedly recognized by the supreme court of Tennessee. As early as 1839, in the case of *Robinson* v. *Mayor of Franklin*, 1 Humph. 156, and in *Mayor of Columbia* v. *Beasly*, Id. 232, the court says: "The legislature may tax privileges in what proportion they choose, and so may municipal corporations, provided the inequality be not such as to make it oppressive upon a particular class of the community."

It results, therefore, in Tennessee that the legislature may declare the right to carry on any business or occupation to be a privilege, to be purchased from the state upon such conditions only as the law may prescribe, to engage in and pursue which, without compliance therewith, is illegal. In the present case "the running or using of sleeping cars or coaches on railroads in Tennessee, not owned by the railroads upon which they are run or used, is declared to be a privilege." The condition upon which it may be obtained and exercised is the payment of an annual tax of $75 for every car so run and used. If that condition is not complied with, such running and using of sleeping cars or coaches is forbidden and is unlawful. The right to attach this condition involves the right to attach any other the legis-

lature may see fit to adopt, and the question of the right to impose the tax, as a condition of the exercise of the privilege, resolves itself into the broader question of the right to prohibit it altogether; for that which the legislature may license it may forbid. Indeed, it is forbidden unless it is licensed. The question, thus reduced, becomes one, not of the limitations upon the taxing powers of the state, but upon its power to declare the business of this company, as carried on upon and across its territory, a privilege, or to forbid it altogether. "Beyond question," said Mr. Justice CLIFFORD, delivering the opinion of the court in *Transportation Co.* v. *Wheeling,* 99 U. S. 273–279, "these authorities show that all subjects over which the sovereign power of a state extends are objects of taxation, the rule being that the sovereignty of a state extends to everything which exists by its own authority or is introduced by its permission, except those means which are employed by congress to carry into execution the powers given by the people to the federal government, whose laws, made in pursuance to the constitution, are supreme."

And according to the decision in *Crandall* v. *Nevada,* 6 Wall. 35, the power of the states, whether exerted in the form of taxation or otherwise, is still further limited, so as not to deny or impair any rights belonging to citizens of the United States, as such, by virtue of the constitution, as in that case, the right of the people to pass and repass into, through, and out of any state, without interruption. In that case Mr. Justice MILLER, delivering the opinion of the court, after commenting on the case of *McCulloch* v. *Maryland,* 4 Wheat. 316, said (page 46:)

"It will be observed that it was not the extent of the tax in that case which was complained of, but the right to levy any tax of that character. So in the case before us it may be said that a tax of one dollar for passing through the state of Nevada by stage, coach, or railroad cannot sensibly affect any function of the government or deprive a citizen of any valuable right. But if the state can tax a railroad passenger one dollar, it can tax him $1,000. If one state can do this, so can every other state. And then one or more states, covering the only practicable routes of travel from the east to the west or from the north to the south, may totally prevent or seriously burden all transportation of passengers from one part of the country to another."

In the case of the *State Freight Tax,* 15 Wall. 232–281, it was distinctly declared that the transportation of passengers or merchandise through a state, or from one state to another, was subject to the exclusive jurisdiction of congress, and that a state could not directly tax persons or property passing through it, or tax them indirectly by levying a tax upon their transportation. And in *Almy* v. *State of California,* 24 How. 169, as explained in *Woodruff* v. *Parham,* 8 Wall. 123–138, it was decided that a stamp tax imposed by state authority upon bills of lading for the transportation of gold and silver from one point within the state to any point without the state "was a regulation of commerce, a tax imposed upon the transportation of goods from one state to another over the high seas, in conflict

with that freedom of transit of goods and persons between one state and another, which is within the rule laid down in *Crandall* v. *Nevada*, 6 Wall. 35, and with the authority of congress, to regulate commerce among the states." If a tax upon the person or thing carried is a regulation of commerce forbidden to the states, it seems impossible to escape the conclusion that a tax imposed as the price of the privilege of being carried is equally such a regulation. It is immaterial whether the privilege granted or withheld is attributed to the carrier or to that which he is engaged in carrying. In both cases it is a burden upon the act of transportation and a tribute levied directly upon commerce itself. In the language of Mr. Justice STRONG, delivering the opinion of the court in the case of the *State Freight Tax*, 15 Wall. 232-281:

"Interstate transportation of passengers is beyond the reach of the state legislature. * * * We regard it as established that no state can impose a tax upon freight transported from state to state, or upon the transporter because of such transportation."

The case is to be distinguished from that of *Osborne* v. *Mobile*, 16 Wall. 479, where the subject of the tax was not the act of transportation itself, but a general business carried on within the state by a resident citizen thereof, which included the making of contracts for transportation beyond the limits of the state. Nor is it within the decision of the case of *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365; S. C. 2 Sup. Ct. Rep. 257, where the point ruled was that the levying of a tax upon vessels or other water-craft, or the exaction of a ferry license by the state within which the property subject to the exaction has its *situs* is not a regulation of commerce within the meaning of the constitution of the United States.

In the present case the Pullman Southern Car Company, a corporation of Kentucky, has no domicile in Tennessee, and is not personally subject to its jurisdiction for purposes of taxation, and the sleeping cars which it runs and uses upon the railroads of that state, in the transportation of passengers into and from it, from and to other states, have no *situs* within that state for the purposes of taxation. They are not brought into the state for the purpose of being employed in a business carried on within it, and do not become a part of the mass of property within the jurisdiction of the state for purposes of taxation. They are in the state only as passing to and from it while in the act of transportation, performed by virtue of a right secured to the owners of them; not by the authority of the laws of Tennessee, but by virtue of a right secured by the exclusive jurisdiction of congress under the constitution.

It has been suggested that these sleeping cars do not really perform any office in the act of transportation, but may be likened rather to hotels or inns on wheels, and, like other hotels or inns, subject to regulation and license by the state; but the refinement is too subtle to be sound. Even regarded as such, hotels or inns on wheels, pro-

pelled by steam-power over railroad tracks, receiving and delivering travelers at points widely separated in distance, would properly be considered still as vehicles of transportation, and their use in that way would be commerce. The conclusion reached from these considerations is that the right to levy a tax upon the running and using of sleeping cars or coaches on railroads in Tennessee, not owned by the railroads upon which they are run or used as a privilege, can rest only upon a concession that the state may regulate it in all other respects, or forbid it altogether; that, consequently, it is a regulation of commerce among the states when applied to such cars employed in interstate transportation, and in that application contrary to the constitution of the United States, and therefore null and void.

In accordance with this opinion, judgments and decrees will be entered in these cases as follows: (1) In No. 2,582, the action against the comptroller to recover the taxes paid under protest as illegally exacted, the demurrer will be overruled, and judgment rendered for the plaintiff for such amount as may be agreed on or otherwise ascertained. (2) In No. 2,591 a decree will be rendered finding the equity of the cause with the complainant, and granting the relief prayed, enjoining the several county authorities from proceeding further in the collection of the tax. (3) In No. 2,679 the bill of the state will be dismissed for want of equity.