HELSON AND RANDOLPH, CO-PARTNERS, *v.*
KENTUCKY.

No. 296.   Argued February 27, 28, 1929.—Decided April 8, 1929.

*Mr. James G. Wheeler,* with whom *Messrs. Charles K. Wheeler* and *D. H. Hughes* were on the brief, for plaintiffs in error.

*Mr. James M. Gilbert,* Assistant Attorney General of Kentucky, with whom *Mr. J. W. Cammack,* Attorney General, was on the brief, for defendant in error.

. MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action brought by the Commonwealth of Kentucky against plaintiffs ˸ error to recover an amount levied under § 1, c. 120, Acts 1924,* which imposes a tax of three cents per gallon on all gasoline sold within the Commonwealth at wholesale. The words "sold 'at wholesale,'" as used in the act, are defined to include "any and all sales made for the purpose of resale or distribution or *for use,*" and also to include any person who

---

*. . . A State tax of Three cents (3¢) per gallon is hereby imposed on all gasoline, as defined herein, sold in this Commonwealth at wholesale, as the words "at wholesale" are hereinafter defined. . . . The words "at wholesale," as used in this act, shall be held and construed to mean and include any and all sales made for the purpose of resale or distribution or for use, and, as well, the gasoline furnished or supplied for distribution within this State, whether the distributor be the same person who so furnished the same, his agent or employer or another person; and also to mean and include any person who shall purchase or obtain such gasoline without the State and sell or distribute or use the same within the State. . . .

shall purchase such gasoline without the state "and sell or distribute *or use* the same within the State." The tax was increased from three cents to five cents a gallon by § 1, c. 169, Acts 1926; and part of the amount sued for was computed at the latter rate.

Plaintiffs in error are engaged in operating a ferry boat on the Ohio River between Kentucky and Illinois. They do an exclusively interstate business. They are citizens and residents of Illinois. Their office and place of business and the situs of all their personal property is in that state. The motive power of the boat is created by the use of gasoline, all of which is purchased and delivered to plaintiffs in error in Illinois. It is stipulated that 75% of this gasoline was actually consumed within the limits of Kentucky, but all of it in the making of interstate journeys. The tax, in question, was computed and imposed upon the use of the gasoline thus consumed.

The trial court rendered judgment for the Commonwealth, which was affirmed by the state court of appeals. 225 Ky. 45. The validity of the statute as applied by the state courts was assailed upon the grounds—(1) that it violated the provisions of the state constitution requiring that taxes should be uniform upon all property of the same class, and (2) that it was in contravention of the commerce clause and other provisions of the federal Constitution. The state court of appeals held that the tax was not a property tax, but an excise, and, therefore, the uniformity clause of the state constitution was not involved. The claim under the commerce clause of the federal Constitution was denied on the ground that the tax was confined to gasoline used within the limits of the state and the commerce clause was not affected. It is with the latter question only that we are here concerned.

Regulation of interstate and foreign commerce is a matter committed exclusively to the control of Congress, and "the rule is settled by innumerable decisions of this

Court, unnecessary to be cited, that a state law which directly burdens such commerce by taxation or otherwise, constitutes a regulation beyond the power of the state under the Constitution. It is likewise settled that transportation by ferry from one state to another is interstate commerce and immune from the interference of such state legislation. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 217; *Mayor of Vidalia* v. *McNeely,* 274 U. S. 676, 680. The power vested in Congress to regulate commerce embraces within its control all the instrumentalities by which that commerce may be carried on. *Gloucester Ferry Co.* v. *Pennsylvania, supra,* p. 204. A state cannot " lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived form that transportation, or on the occupation or business of carrying it on." *Leloup* v. *Port of Mobile,* 117 U. S. 640, 648; *Lyng* v. *Michigan,* 135 U. S. 161, 166; *Ozark Pipe Line* v. *Monier,* 266 U. S. 555, 562. While a state has power to tax property having a situs within its limits, whether employed in interstate commerce or not, it cannot interfere with interstate commerce through the imposition of a tax which is, in effect, a tax for the privilege of transacting such commerce. *Adams Express Company* v. *Ohio,* 166 U. S. 185, 218.

The following are a few of the cases illustrating the many applications of these principles.

A state statute imposing a tax upon freight, taken up within the state and carried out of it, or taken up without the state and brought within it, was held, in the *Case of the State Freight Tax,* 15 Wall. 232, to constitute a regulation of interstate commerce in conflict with the Constitution. The Court said (pp. 275–276):

" Then, why is not a tax upon freight transported from State to State a regulation of interstate transportation. and, therefore. a regulation of commerce among the

States? Is it not prescribing a rule for the transporter, by which he is to be controlled in bringing the subjects of commerce into the State, and in taking them out? The present case is the best possible illustration. The legislature of Pennsylvania has in effect declared that every ton of freight taken up within the State and carried out, or taken up in other States and brought within her limits, shall pay a specified tax. The payment of that tax is a condition, upon which is made dependent the prosecution of this branch of commerce. And as there is no limit to the rate of taxation she may impose, if she can tax at all, it is obvious the condition may be made so onerous that an interchange of commodities with other States would be rendered impossible. The same power that may impose a tax of two cents per ton upon coal carried out of the State, may impose one of five dollars. Such an imposition, whether large or small, is a restraint of the privilege or right to have the subjects of commerce pass freely from one State to another without being obstructed by the intervention of State lines."

A state or state municipality is without power to impose a tax upon persons for selling or seeking to sell the goods of a nonresident within the state prior to their introduction therein, *Stockard* v. *Morgan*, 185 U. S. 27; or for securing or seeking to secure the transportation of freight or passengers in interstate or foreign commerce. *McCall* v. *California*, 136 U. S. 104; *Texas Transp. Co.* v. *New Orleans*, 264 U. S. 150. Nor can a state impose a tax on alien passengers coming by vessels from foreign countries. *People* v. *Compagnie Gen. Transatlantique*, 107 U. S. 59; and see *Passenger Cases*, 7 How. 283. In *Minot* v. *Philadelphia, W. & B. R. Co.*, 2 Abb. (N. S.) 323, 343; 17 Fed. Cas. 458, 464, it was held that a state law imposing a tax for the use within the state of locomotives, passenger and freight cars, and for the use of rolling stock generally, was a license fee exacted for the privilege of such

use. It appearing that the larger portion of the locomotives, etc., was used for the interstate transportation of persons and property, the court held that the statute constituted a regulation of such commerce. In the course of the opinion, by Mr. Justice Strong, it is said:

" It is of national importance that in regard to such subjects there should be but one regulating power, for if one state can directly tax persons and property passing through it, or indirectly, *by taxing the use of means of transportation,* every other may; thus commercial intercourse between states remote from each other may be destroyed."

To the same effect is a decision by Mr. Justice Matthews, in respect of a similar state statute imposing a tax for the running or using of sleeping cars within the state in the transportation of interstate passengers. *Pullman Southern Car Co.* v. *Nolan,* 22 Fed. 276, 280–281. On error from this Court, the decision was affirmed and the tax condemned as one laid on the right of transit between states. *Sub nom. Pickard* v. *Pullman Southern Car Co.,* 117 U. S. 34, 46. To impose a tax upon the transit of passengers from foreign countries or between states is to regulate commerce and is beyond state power. The doctrine of *Crandall* v. *Nevada,* 6 Wall. 35, so far as it is to the contrary, has not been followed. *Head Money Cases,* 112 U. S. 580, 591–594; *Henderson* v. *Mayor of N. Y.,* 92 U. S. 259, 270; *Pickard* v. *Pullman Southern Car Co., supra,* p. 48. The stamp tax on bills of lading for the transportation of gold and silver from within the state to points outside, which was held invalid (inadvertently on the ground that it was a tax on exports) in *Almy* v. *California,* 24 How. 169, was characterized in *Woodruff* v. *Parham,* 8 Wall. 123, 138, as " a regulation of commerce, a tax imposed upon the transportation of goods from one State to another, over the high seas, in conflict with that freedom of transit of goods and persons between one State

and another, which is within the rule laid down in *Crandall* v. *Nevada,* and with[-in] the authority of Congress to regulate commerce among the States."

The statute here assailed clearly comes within the principle of these and numerous other decisions of like character which might be added. The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferry boat, would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax, which falls directly upon the use of one of the means by which commerce is carried on, directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this Court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected. "All restraints by exactions in the form of taxes upon such transportation, or upon acts necessary to its completion, are so many invasions of the exclusive power of Congress to regulate that portion of commerce between the States." *Gloucester Ferry Co.* v. *Pennsylvania, supra,* p. 214.

*Judgment reversed.*

MR. JUSTICE MCREYNOLDS is of opinion that the judgment below should be affirmed.

Concurring opinion of MR. JUSTICE STONE.

In view of earlier decisions of the Court, I acquiesce in the result. But I cannot yield assent to the reasoning by which the present forbidden tax on the use of property in interstate commerce is distinguished from a permissible

tax on property, measured by its use or use value in interstate commerce. *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 456; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus,* 154 U. S. 439, 445; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 220; *Western Union Tel. Co.* v. *Missouri,* 190 U. S. 412, 422; cf. *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18. Nor can I find any practical justification for this distinction or for an interpretation of the commerce clause which would relieve those engaged in interstate commerce from their fair share of the expense of government of the states in which they operate by exempting them from the payment of a tax of general application, which is neither aimed at nor discriminates against interstate commerce. It "affects commerce among the States and impedes the transit of persons and property from one State to another just in the same way, and in no other, that taxation of any kind necessarily increases the expenses attendant upon the use or possession of the thing taxed." *Delaware Railroad Tax,* 18 Wall. 206, 232.

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur in this opinion.