## BOEING AIR TRANSPORT, Inc., v. EDELMAN, State Treasurer, et al. *

### No. 578.

Circuit Court of Appeals, Tenth Circuit.

Oct. 4, 1932.

John W. Lacey, of Cheyenne, Wyo. and William M. Allen, of Seattle, Wash. (Lacey & Loomis, of Cheyenne, Wyo., Eugene Luccock, of Seattle, Wash., and Todd, Holman & Sprague, of Seattle, Wash., on the brief), for appellant.

Thomas Seddon Taliaferro, Jr., of Rock Springs, Wyo. (Fred W. Johnson, of Rock Springs, Wyo., on the brief), for appellee City of Rock Springs.

James A. Greenwood, Atty. Gen., George W. Ferguson, Asst. Atty. Gen., and Harry B. Henderson, Jr., Atty. for City of Cheyenne, of Cheyenne, Wyo. (Richard J. Jackson, Deputy Atty. Gen., and Philip S. Garbutt, Asst. Atty. Gen., on the brief), for appellees State Treasurer and City of Cheyenne.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

Appellant, a corporation under the laws of the State of Washington, brought this suit seeking an injunction against the State Treasurer of Wyoming restraining him from collecting from appellant a license tax imposed by the statutes of Wyoming on gasoline to be used by appellant in its airplanes in the transportation of passengers, express, and United States mail in interstate commerce, and to recover the tax theretofore paid. In appellant's business its planes, carrying both intrastate and interstate commerce, ply between Chicago, Illinois, and Oakland, California, and by written agreements with Cheyenne, Wyoming, and Rock Springs, Wyoming, the planes land on municipal fields, at each of those places and take on gasoline, that being the fuel used to generate the needed power in flights.

The bill charges that the Wyoming statute is an interference with and a burden on that commerce in violation of clause 3, § 8, article 1 of the Constitution of the United States, and is therefore illegal and void, "in that the said statutes purport to impose and levy, and do impose and levy a tax on all gasoline purchased or consumed as fuel in Wyoming to

*Rehearing denied November 25, 1932.

propel airplanes flying between the said State and neighboring States in interstate commerce, thus exacting the said tax as the price of the privilege of using an instrumentality of interstate commerce and thus evading the exclusive power of Congress to regulate commerce between the several States." It is further charged:

"That under the provisions of said statutes the wholesale distributors or consignees of gasoline are made agents of the State of Wyoming for the purpose of collecting said gasoline tax, said agents acting under the direction of the defendant, State Treasurer, and while the said distributors and/or consignees of gasoline actually collect, return and remit said tax to the State of Wyoming and to the defendant, the State Treasurer, said gasoline tax is in law and in practice levied and imposed against the consumer of said gasoline within the State of Wyoming and not against the wholesale distributor or consignee, and such tax is paid by all such consumers, ordinarily direct to the defendant, the Treasurer of the State of Wyoming, which said tax this plaintiff has been forced to pay in order to purchase or consume any gasoline in the State of Wyoming, and will hereafter be forced to pay until defendant, his agents, servants, employees, workmen and other persons acting by and through him are enjoined and restrained from collecting the same by order of this court. * * *

"Plaintiff further avers that * * * the plaintiff in order to continue to operate its said airplanes in the conduct of its said business is compelled to purchase from time to time, and from day to day, large quantities of gasoline in the State of Wyoming, and that no such distributor or any other dealer in said State will sell such gasoline to the plaintiff unless the plaintiff so purchasing the same shall make payment of the said tax levied and assessed thereon at the time of the purchase thereof, and that hence the plaintiff is unable to purchase any gasoline in the State of Wyoming for the operation or propulsion of its said airplanes without at the time paying the said tax thereon, and plaintiff alleges that by the express provisions of said Acts and/or by the practical operation thereof by the defendant and the legal effect thereof the said tax is absorbed in the price paid for all gasoline purchased in Wyoming for use or consumption in said State by the purchaser, including this plaintiff, and that under the provisions of said Acts the said tax, although required to be collected and returned to the State by the distributor of or dealer therein as the agent of the State, is both in practice and in legal effect a tax on the consumer of such gasoline. * * * *"

It is further alleged in the bill:

"That a part of such gasoline used by the plaintiff is purchased by and delivered to the plaintiff in the State of Wyoming; that a part thereof is purchased outside of said State, and that such gasoline purchased and delivered to the plaintiff either in or outside of said State of Wyoming is used and consumed by it as fuel for the propulsion of its said airplanes in its interstate commerce and business as aforesaid, and is an instrumentality of interstate commerce."

That there has been exacted of it, and it has paid said tax amounting to several thousand dollars on gasoline so used by appellant in interstate commerce, whether purchased or delivered to it in the State of Wyoming or elsewhere, under protest, because of threatened criminal and civil penalties authorized by the statute for non-payment.

■■■ The statute was first passed in 1923. It levied a tax of one cent on each gallon of gasoline sold or used within the state. It has been amended at every subsequent session. We think it plain that the original act and as amended imposes the tax only against wholesalers as that term is defined in the original act. Section 1 of the original act (Session Laws, Wyoming, 1923, chapter 73) defined wholesalers thus:

" 'Wholesaler' is hereby defined as any person, firm or corporation who imports or causes to be imported gasoline, as herein defined, for sale in the State of Wyoming to the jobber or consumer, or to the persons, firms, corporations or associations of persons, who, in turn, sell to the jobber or consumer. The term 'wholesaler' is further defined to mean any person, firm or corporation who produces, refines, manufactures, blends or compounds gasoline in the State of Wyoming for use, sale or distribution in this State."

Section 3 required that every wholesaler, as defined in the act, who was then engaged or should engage in the sale or use of gasoline, should not later than the fifteenth of each month render a statement to the State Treasurer showing the amount of gasoline sold or used in the state during the preceding calendar month, and to pay to the State Treasurer at the same time the license tax of one cent per gallon on all such gasoline. That act also required that every wholesaler should keep a record of all purchases, receipts, sales, and distribution of gasoline, and that the

funds received from the license tax by the State Treasurer should be used for the maintenance of highways. Section 6 of the original act made it unlawful for any wholesaler to sell or offer gasoline for sale while delinquent in the payment of the tax or any part thereof. It imposed penalties, civil and criminal, for violations of that provision. The amount of the tax was thereafter raised at subsequent sessions until it was four cents per gallon prior to and at the time this suit was brought.

Section 3 of the original act was amended at the session of 1927 (chapter 70, § 2). It did not change the requirement of the original act that the wholesaler should pay the tax, but that amendment further provided:

"Every person who shall use any gasoline in this State upon which the said tax has not been paid by any wholesaler in this State, shall, on or before the 25th day of each calendar month * * * render a true statement to the State Treasurer, duly signed and sworn to, and accompany such statement with the payment of a tax of three cents per gallon on all gasoline as shown by such statement to have been used by him."

Section 4 of the amendatory act of 1927 required that every person or corporation who should have in his possession for the purpose of sale, or should sell or offer for sale, gasoline for motor vehicles, should display in a conspicuous place a sign showing the price at which said gasoline would be sold and the amount of tax thereon, and that neglect in that respect would constitute a misdemeanor subjecting the offender to fine or imprisonment.

At the general session of 1929 the legislature (Laws 1929, c. 89, § 1) provided that reports to the State Treasurer of all gasoline sold or used during the preceding month should be made by wholesalers, and that the wholesaler should at the same time pay to the State Treasurer a license tax of four cents per gallon on all such gasoline. Thereafter at a special session in 1929 (chapter 14) the legislature again amended section 3 of the original act so that it read thus:

"On and after April 1, 1929, each and every wholesaler as defined in this Act, who is now engaged or who may hereafter engage in his own name, or in the name of others, or in the name of his representatives or agents in this State, in the sale or use of gasoline as herein defined shall not later than the fifteenth of each month, render to the State Treasurer a statement of all gasoline sold or used by them in the State of Wyoming dur-

ing the preceding calendar month, and pay to the State Treasurer at the same time, the license tax of four cents per gallon on all such gasoline. Said statement to the State Treasurer shall be upon blanks furnished by him, and shall be sworn to by the owner or managing agent in the case of an individual, firm or association, by the resident general agent or attorney, in the case of a foreign corporation or by one of the principal officers in the case of a domestic corporation. Every person, firm or corporation, who shall use any gasoline in this state upon which the said tax has not been paid by any wholesaler in this state, shall, on or before the 15th day of each calendar month, beginning with the first calendar month after this Act has become effective, render a true statement to the State Treasurer, duly signed and sworn to, and accompany such statement with the payment of a tax of four cents per gallon on all gasoline as shown by such statement to have been used by him; provided that before making the distribution of funds provided for in Section 1 hereof the State Treasurer shall pay over all funds received from the gasoline license tax on gasoline used at any municipal air field to the city or town where such air field is located, to be used for the maintenance and improvement of such air field."

The latter half of said section 3, supra, as amended at the special session beginning with the words "Every person, firm or corporation, who shall use any gasoline in this state upon which the said tax has not been paid by any wholesaler in this state," makes it plain, we think, that the tax is primarily imposed against a wholesaler.

In substance and effect the facts here are not different from those in the case of Eastern Air Transport, Inc., v. South Carolina Tax Commission, 285 U. S. 147, 52 S. Ct. 340, 341, 76 L. Ed. 673. In that case the Transport Company complained that a license tax of six cents a gallon, imposed on those who sold gasoline, was required to be paid by it for gasoline used in its planes in interstate commerce when it purchased the gasoline in South Carolina, and that the six cents was a direct burden upon interstate commerce. The court said:

"So far as the present question is concerned, the distinction [between an excise tax and a property tax] is not important. If such a license tax for the privilege of making sales within the state were regarded as in effect a tax upon the goods sold, its validity could not be questioned in the circumstances here disclosed, as in that aspect the tax would

be upon a part of the general mass of property within the state and hence subject to the state's authority to tax, although the property might actually be used in interstate commerce. * * * There is no substantial distinction between the sale of gasoline that is used in an airplane in interstate transportation and the sale of coal for the locomotives of an interstate carrier, or of the locomotives and cars themselves bought as equipment for interstate transportation. A nondiscriminatory tax upon local sales in such cases has never been regarded as imposing a direct burden upon interstate commerce and has no greater or different effect upon that commerce than a general property tax to which all those enjoying the protection of the state may be subjected."

Appellant in argument and brief puts emphasis on the word "use" found in the latter part of section 3, supra, and says it is a use tax, and the use was in interstate commerce, relying on Helson v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683. It may be conceded that the forepart of this section imposes a use tax against the wholesaler on that part of the gasoline that it consumes; but that is not the tax involved here. The tax here under consideration is the license tax against the wholesaler exacted of him for the privilege of carrying on the business of selling gasoline, and when appellant made its purchases it had an option under the statute of then paying the tax added to the purchase price, or of assuming its payment and accounting to the State Treasurer therefor after it had used the gasoline. It chose to do the latter and thus discharged a primary obligation of the wholesaler. This case is wholly unlike Helson's case. There the gasoline was purchased in Illinois for a ferry boat engaged in interstate commerce, and the tax involved was held to be a use tax imposed by a Kentucky statute on that part of the gas consumed by the ferry boat while within Kentucky. The court said, pages 249, 252 of 279 U. S., 49 S. Ct. 279, 280:

"While a state has power to tax property having a situs within its limits, whether employed in interstate commerce or not, it cannot interfere with interstate commerce through the imposition of a tax which is, in effect, a tax for the privilege of transacting such commerce. * * * The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferryboat would present an exact parallel."

So we conclude that appellant's attack upon the Wyoming statute cannot be sustained.

So far we have had in mind only gasoline purchased in Wyoming. The bill alleges that a part of the gasoline purchased and used by appellant in its planes in interstate commerce was purchased outside of Wyoming. The testimony on that subject is this: Appellant procures gasoline from both inside and outside the State of Wyoming; after it is purchased part of it is brought to Cheyenne and part to Rock Springs and stored in tanks for use at appellant's direction and subject to any use it wishes to make of it; there is one tank at Rock Springs and two at Cheyenne; the capacity of one of the tanks at Cheyenne is five thousand gallons and the other two thousand gallons; appellant sells some gasoline at Cheyenne and at Rock Springs; it displays a price sign at each place, stating the price of gasoline including the tax; other planes use both of these fields, and appellant uses gasoline locally at each field in trucks, automobiles, for testing purposes, and washing planes; there is no separate receptacle at either field in which appellant stores the gasoline which it sells to other airships, or buys outside Wyoming; it is all put into the storage tanks; there are gauges on the pumps, and a record was kept each time that gasoline was drawn from the tanks; the amount used locally by appellant, or sold, is in this way kept separately from the amount used by appellant in its interstate flights; it likewise measures the gasoline put into its planes for interstate commerce use. The record does not disclose how much gasoline during the times in question was purchased outside the state. On the facts stated it must have been mingled in the tanks with gasoline purchased within the state. Appellant paid the tax on the gasoline used by it locally and on that sold to others without protested payments on all put in its tanks and used in interstate flights. Obviously it is impossible to ascertain how much gasoline that came from outside of Wyoming was thus used in its planes. Moreover, it does not appear whether gasoline purchased outside of Wyoming was delivered to appellant in Wyoming or outside the state. Judges McDERMOTT and POLLOCK are agreed however that the pleadings and evidence are sufficient to require an injunction restraining collection of the tax on gasoline obtained by appellant on purchases made outside Wyo-

ming and then brought into the state and used in its planes in interstate flights.

The Wyoming Legislature at its general session in 1929 passed another act (chapter 89) relating to the sale and delivery of gasoline. Section 1 of that act requires that every person, firm, corporation, association, co-partnership, or common carrier transporting, conveying or bringing gasoline into the state of Wyoming for retail or wholesale consumption or distribution within the state shall furnish to the State Treasurer not later than the 10th of each calendar month a verified statement showing the number of gallons of gasoline delivered within the State of Wyoming during the preceding month, giving the name of the person, firm, corporation, association, or co-partnership, to whom the same was delivered and the place of delivery. It is further provided that:

"Every wholesaler in gasoline and every person, firm, corporation, association, co-partnership, or common carrier, transporting, conveying or bringing gasoline into the State of Wyoming for retail or wholesale consumption or distribution within the State of Wyoming, as in this Act defined shall keep a record of all purchases, receipts, sales and distribution of gasoline." Section 4.

It further provided that such record shall at all times be subject to inspection by the State Treasurer. A penalty is provided for failure to make such report. No data relative to the amount of gasoline procured by appellant from outside the state required by this act is found in the record. It is therefore impossible to even approximate the amount of gasoline coming from the outside during the time in question or the conditions of purchase and delivery. Conceding that appellant might make purchase of gasoline outside the state under given circumstances, bring that gasoline to Cheyenne and Rock Springs and use it in interstate flights and not be subject to account to the State Treasurer for the statutory tax on gasoline so used, it is the writer's opinion that the pleadings and facts in this case are too meager and indefinite to require and sustain a ruling and decree thereon.

The proviso to said section 3 of this act was put into that section at the special session of 1929 after the City of Cheyenne had entered into a written contract with appellant by which the latter obtained the right for a consideration to use the city's airplane field for twenty-five years commencing July 1, 1929, in landing, taking off, and there putting their planes in condition. The right was not exclusive. Other planes could be given and were given similar rights. The city has made valuable improvements, as has appellant, at their respective costs. Appellant agreed to pay a specified amount in annual rentals, and additional costs of named future improvements and maintenance and management of the field were to be apportioned between them in a way stated in the contract. The city agreed that appellant should be entitled to the full use of the field during the lease on terms as favorable as might be granted by the city to other users, and that no charge should be exacted from appellant for any use which it might make additional to that specified in the contract, and that the city would impose no charge of any kind or character for materials or other products purchased or otherwise acquired by appellant for use on the premises leased. Later the city authorized a bond issue of $15,000.00 for enlargement of the field and for improvements such as grading, leveling, fencing, etc. Appellant contends that the proviso to section 3 impairs the obligations of the contract between the city and appellant in that it is in violation of section 10, article 1 of the United States Constitution. The proviso reads thus:

"Provided that before making the distribution of funds provided for in Section 1 hereof the State Treasurer shall pay over all funds received from the gasoline license tax on gasoline used at any municipal air field to the city or town where such air field is located, to be used for the maintenance and improvement of such air field."

We are not impressed with this contention. It should be said it is made in response to statements of the trial judge that the tax on gasoline used at the field and turned over to the city pursuant to the proviso might be regarded as compensation to the city for the facilities it furnished and its outlay in maintenance and upkeep of the field. The trial judge relied on Sprout v. City of South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45, and others like it. But it will be seen from what has been said we do not rest our conclusion on that ground. The obligations of the contract were in no way affected by the proviso. It provided a fund with which the city's obligations might be discharged, in part at least, but without it all of the tax would have been applied on the State's highways. Appellant was not injured by the change and cannot complain. Hooker v. Burr, 194 U. S. 417, 24 S. Ct. 706, 48 L. Ed. 1046.

The District Court denied any relief by injunction and dismissed the bill. In so far as the court denied the writ prayed for the case will be.remanded with directions to issue the writ enjoining collection of the tax on all gasoline· procured by appellant on purchases completed outside the State of Wyoming and then brought into that state and used in its planes in interstate commerce. In all other respects the order of dismissal of the District Court is affirmed. The costs on appeal will be divided, each party will be adjudged to pay the costs that it or they incurred.

It is so ordered.