The Shell Company (P. R.) Ltd., Plaintiff and Appellant, v. Rafael Buscaglia, Treasurer of Puerto Rico, Defendant and Appellee.

No. 8984.—Argued March 8, 1945.—Decided May 28, 1945.

Sifre, Franceschi & Sifre and Rafael Pastor for appellant. Jesús A. González, Acting Attorney General, and G. Benítez Gautier, Deputy Attorney General, for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

The Shell Company (P. R.) Ltd., hereinafter referred to as the company, introduced into Puerto Rico between September 24, 1931, and April 10, 1932, more than a million gallons of Diesel oil. Act No. 15 of August 24, 1933, amending Act No. 40 of 1931, taxed for the first time and prospectively the Diesel oil by imposing a 4 cents tax on each gallon "introduced into or manufactured, used, or consumed or otherwise disposed of for consumption in, Puerto Rico."

When this Act became effective the company still had in its tanks a certain amount of oil on which it paid under protest a tax amounting to $46,912.66 which it sought to recover by suit. That suit was decided in favor of the Government, *The Shell Co. (P. R.) Ltd.* v. *Treasurer,* 55 P.R.R. 560, but in it none of the questions raised herein was involved.

After the tax to which we have referred was paid, the

Treasurer of Puerto Rico, with the approval of the Auditor and the Governor, refunded to the company $14,088.57 out of the $46,912.66 already paid. This refund was due to the fact that the company had re-exported various amounts of oil to be sold or refined outside of Puerto Rico. It is an admitted fact, moreover, that on the oil thus refined the corresponding tax was paid when introduced again into Puerto Rico and, as to that which was sold outside of Puerto Rico, that the company did not add any amount to the selling price equivalent to the tax.

Upon the enactment of Act No. 217 of May 12, 1942, by virtue of which the Legislature "re-levied," retroactively to 1931, the taxes on gasoline and Diesel oil, the Treasurer required the company to pay the $14,088.57 which had been refunded to it plus $704.43 as surcharges and $8,616.33 as interest which amounts were paid by the company under protest. Thereupon it brought an action for the recovery thereof,[1] which was dismissed as to the $14,088.57 claimed in the second court of the complaint. The company appealed.

The lower court decided:

(1) That the company had "used" the Diesel oil in Puerto Rico because in order to re-export it "it was necessary to withdraw it from the tanks where it was stored and this withdrawal constituted a *use* of the oil in Puerto Rico for which privilege the tax should be paid as soon as the oil was withdrawn from the tank"; (2) that the administrative rule (which has prevailed for more than 10 years) in construing Act No. 15 of 1933 in the sense that said statute did not tax the oil when it was introduced into Puerto Rico to be subsequently exported, is contrary to said Act and, furthermore, that under Act No. 217 of 1942 the Legislature was

---

[1] In another count of the complaint the company claimed the return of taxes paid under protest which had been levied on the Diesel oil imported by the company and sold and used before the enactment of Act No. 15 of 1933, but since the lower court sustained said count and the Treasurer has not appealed, this question is not involved in the present appeal.

authorized to levy a tax retroactively " . . . to a time subsequent to August 24, 1933, when the privilege of *using* the oil was already taxed . . . " inasmuch as said Act " . . . did not deprive the plaintiff of any vested right . . . and it was morally and legally bounded to pay the taxes which it now claims and to return the refunds made . . . "; and (3) that the Act of February 12, 1904, did not authorize the Treasurer to return the taxes involved in this action because "the language of said statute when referring to a *review* and *correction* of the tax receipts seems to apply only to property taxes and not to income taxes; but assuming—without admitting it—that said Act is applicable to all kind of taxes, its language refers only to taxes paid in excess or improperly, and we have already seen that the taxes involved herein have been properly and legally assessed and collected."

According to our decision in *Pyramid Products* v. *Buscaglia, Treas.*, 64 P.R.R. 788, the conclusions of the lower court are erroneus. The only difference between said case and the one at bar is that in the former there was involved a 7 cents tax on gasoline and in the latter a 4 cents tax on Diesel oil and that, although in connection with the gasoline, Act No. 15 of 1933 levies a tax on each gallon "introduced, manufactured, sold or consumed or otherwise disposed of for consumption in Puerto Rico," as to the oil, the word "used" instead of "sold" was employed. We expressly held in that case that " . . . The words 'or otherwise disposed of' after the verbs 'imported, manufactured, sold, or consumed' indicate another manner of disposing of the article, as for example, conveying, *using,* or giving. And if the gasoline which is otherwise disposed of by conveyance, use or gift, is only taxable when it is disposed of by any of these means, for the consumption in Puerto Rico, there is no reason to believe that is was not the intention of the Legislature to require that the sale,—which is one of the manners of disposing of the gasoline,—in order to be taxable should be for consumption in Puerto Rico. And if the sale, *use,* consump-

tion, conveyance, or gift of the gasoline are only taxable when it is for consumption in Puerto Rico, we must conclude that it was not the intention of the Legislative Assembly to tax the importation of the gasoline when it was made for purposes other than to dispose of it by any of the aforesaid means 'for the consumption in Puerto Rico'." (Italics ours.)

*Edelman* v. *Boeing Air Transport,* 289 U. S. 249, on which the lower court mainly relied to maintain that the mere withdrawal of the oil from the tanks to be re-exported constituted a use thereof by the company, may be easily distinguished. In said case it was expressly stated that according to the statute, as it had been administratively construed, the tax levied on the "use" of the gasoline in the State of Wyoming included the withdrawal from the storage tanks at the airport and the placing thereof in the planes of the Boeing company. The Court, limiting the scope of its decision, stated: "Issue is joined on the only question raised by the pleadings, whether the taxation of the gasoline which respondent withdraws from storage and uses for 'filling' its planes imposes an unconstitutional burden on interstate commerce. Hence we confine our decision to that question." And it held that this administrative construction did not violate any constitutional right of the plaintiff in connection with said commerce, saying at pp. 251–53:

"*As the statute has been administratively construed and applied,* the tax is not levied upon the *consumption* of gasoline in furnishing motive power for respondent's interstate planes. The tax is applied to the stored gasoline as it is withdrawn from the storage tanks at the airport and placed in the planes. . . The stored gasoline is deemed to be 'used' within the State and therefore subject to the tax, when it is withdrawn from the tanks.

"A State may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the State, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce. Such a tax cannot be distinguished from that considered and upheld

in *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace, supra.* There it was pointed out that 'there can be no valid objection to the taxation of the exercise of any right or power incident to. . . ownership of the gasoline, which falls short of a tax directly imposed on its use in interstate commerce, deemed forbidden in *Helson* v. *Kentucky,'* 279 U.S. 245. As the exercise of the powers taxed, the storage and withdrawal from storage of the gasoline, was complete before interstate commerce began, it was held that the burden of the tax was too indirect and remote from the function of interstate commerce, to transgress constitutional limitations.

"Despite the fact that the statute as applied is identical in operation with that sustained in *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace, supra,* respondent contends that as the statute is written, the tax is one on the consumption of gasoline in propeling its airplanes in interstate commerce, invalid under *Helson* v. *Kentucky, ·supra.* In that case a Kentucky statute taxing the use of gasoline was applied to that purchased and placed in the tanks of a ferry boat outside the State for use in operating it in interstate commerce. The tax, which was levied only with respect to the gasoline consumed while the ferry boat was within the State, was held to be invalid as, in effect, a direct tax on the privilege of carrying on interstate commerce.

"But the officers of Wyoming, charged with the enforcement of the taxing statute, *are giving no such application to it as was given to that* in *Helson* v. *Kentucky, supra, and it is not suggested that they will.* All that has been done or threatened by them, *under their interpretation of the statute,* infringes no constitutional right of the complainant. In the circumstances, no case is presented, either by pleadings or proof, calling on a federal court of equity to rule *upon the correctness of some other construction which may never be adopted by the state administrative officials or by the state courts.*" (Italics ours.)

The statute construed in *Nashville, Chattanooga & St. Louis Ry. Co.* v. *Wallace,* 288 U..S. 249, cited in the *Edelman* case, *supra,* provided that: "The tax imposed by this Act shall apply to persons, firms or corporations, dealers or distributors storing any of the products mentioned in this Act (gasoline) and distributing the same or allowing the same to be withdrawn from storage whether such withdrawal be

for sale or other use," and in said case the Court stated: "Storage of the gasoline and withdrawal of it from storage within the state for use or sale, are, as the state Supreme Court has held, the events which, by the very terms of the statute, call it into operation."

As may be seen from the language used in the Acts involved in those cases, as well as from the administrative construction and application given to them by the officers called upon to enforce them, the tax was upheld as valid, (1) because it was on the "storage and withdrawal" and (2) it did not place any burden on interstate commerce.

On the contrary, in Puerto Rico the language used in the Act levying the tax on gasoline and oil, the legislative history of said Act, and its administrative and even judicial[2] construction have been in the sense that the word "use" does not refer to the mere storage or withdrawal of those products by the importer, especially where they have been withdrawn from the tanks in order to re-export them for sale outside of Puerto Rico without including in its selling price the amount of the tax, or to refine them, and upon their introduction again into the Island the corresponding tax has been paid.

The use contemplated in our Act is something more than the mere withdrawal of the oil from the storage tanks for the purpose of re-exporting it for sale or refinement outside of Puerto Rico. There is no use at all "for consumption in Puerto Rico", in such operation. As we have held in *P. R. Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870, upon construing § 16 a of the Internal Revenue Law which levies a tax on certain articles "when . . .manufactured, produced or introduced in Porto Rico for domestic use or consumption and not for commercial purposes," the word "use" in this Act is a word "with an economic background: it contemplates

---

[2] These elements should be taken into consideration even to determine jurisdictional questions. Cf. *The Hoover Company* v. *Conway P. Coe*, 325 U.S. 79.

benefit or satisfaction which arises when the article is put to work for the purpose for which it was produced.''

It is unnecessary to repeat here what was stated in the *Pyramid* case, *supra,* as to the scope of Act No. 217 of 1942 the validity of the administrative rule established by former treasurers and the power of executive officers, Auditor and Governor of Puerto Rico, to authorize the return of taxes wrongfully collected under the Act of February 12, 1904 (Comp. Stat. 1911, § 2365, p. 454).

The judgment appealed from should be modified so as to sustain the second cause of action in its entirety and consequently to order the defendant Treasurer to return to the plaintiff the sum of $14,088.57, plus interest.

Mr. Justice De Jesús did not participate herein.