Antonio y Ramón Agudo, haciendo negocios con el nombre común de Agudo Brothers, demandantes y apelantes, *v.* Manuel V. Domenech, sustituído en apelación por Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelado.

No. 7017.—*Sometido:* Noviembre 8, 1935. *Resuelto:* Mayo 6, 1936.

*Leopoldo ·Feliú y Edgar S. Belaval,* abogados de los apelantes; *Hon.*
*Procurador General B. Fernández García* y *R. Cordovés Arana,*
*Procurador General Auxiliar,* ·abogados del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

·Antonio y Ramón Agudo, haciendo negocios bajo el nombre de Agudo Brothers, eran dueños de cierto número de máquinas de juegos de azar (*slot machines*) sobre las cuales pagaron contribuciones sin objeción hasta el 25 de abril de 1933. Después de esa fecha el Tesorero de Puerto Rico, por razón de cierta legislación, insistió en que ellos pagasen una contribución mayor. Agudo Brothers pagó varios aumentos bajo protesta e inició este litigio para recobrar los mismos. La Corte de Distrito de ·San Juan finalmente declaró sin lugar la demanda.

Los apelantes sostienen que no existe ley alguna bajo la cual estos aumentos en la contribución pudieran ser válidamente cobrados. Lo ocurrido fué ·que un proyecto de ley que trataba de aumentar el impuesto por máquina fué pasado por ambas Cámaras de la Legislatura. Por la actuación del funcionario encargado de enrolar (*enrolling clerk*), el proyecto de ley fué firmado por el Presidente del Senado y el *Speaker* de la Cámara con ciertas palabras independientemente adicionadas y que no estuvieron en la mente de los legisladores ni habían sido incluídas en la ley, tal como fué pasada por ellos. El proyecto acordado contenía la disposición de que cada máquina·debería pagar una contribución

de $75 trimestrales y fué enviado al Gobernador con las palabras "un impuesto que no excederá de $75 trimestrales."

Cuando la Legislatura descubrió esta. equivocación, pasó una resolución corrigiéndola o intentando corregirla. Esta resolución fué denominada resolución concurrente. No hubo solicitud para la devolución del proyecto, pero dicha resolución concurrente fué enviada al Gobernador. Éste, teniendo ante sí el proyecto enrolado y la resolución concurrente, eliminó las palabras a las cuales se refería la resolución concurrente y entonces, con lo que puede llamarse una enmienda, firmó el proyecto. En otras palabras, el proyecto enrolado fué verbalmente cambiado para que expresara la intención original de la Legislatura, no mediante acción en cualquiera de las Cámaras, o en ambas, sino por el Gobernador mismo. *Non constat,* si acaso es importante, que el Gobernador pudiese haber estado en la Legislatura al tiempo de firmar el proyecto.

El argumento fundamental de los apelantes consiste, puede decirse, en que no existe autoridad alguna para poner en vigor una ley de la manera intentada en el presente caso. Más específicamente, ellos insisten en que lo que hubo fué un ejercicio del poder legislativo por el Gobernador, en contravención con las disposiciones de la Carta Orgánica; también, que una vez un proyecto enrolado se envía por la Legislatura al Gobernador, la primera pierde todo poder y control sobre el mismo. En otro caso que tenemos pendiente, se insiste en que el poder ordinario de la Legislatura de promulgar debe ser ejercitado por medio de un proyecto presentado en cualquiera de las dos Cámaras y no mediante una resolución conjunta. El apelado sostiene que la acción de la Legislatura no era una resolución conjunta, sino una concurrente. La duda aquí sugerida en cuanto a lo que puede o no puede hacer la Legislatura mediante una resolución deja de ser importante si tenemos razón en cuanto a las conclusiones fundamentales a que hemos llegado.

■■■ Los apelantes citan alguna jurisprudencia. Puede que sea cierto, como regla general, que proyectos de ley una vez pasados por la Legislatura no .pueden ser enmendados o alterados después que los mismos han sido enrolados y enviados al Gobernador, pero no estamos del todo seguros si la Legislatura, bajo circunstancias adecuadas, no puede solicitar su devolución. *Baltimore Fidelity Warehouse Co.* v. *Canton Lumber Co.*, 84 Atl. 188. Hemos usado la palabra "pasados" conscientemente en la oración que antecede porque en ella está la llave de la situación. No estamos cometiendo petición de principio. Es un hecho aceptado que el proyecto, como fué aprobado originalmente por la Legislatura, no contenía las palabras que fueron adicionadas al proyecto enrolado. La cuestión no es si la Legislatura puede añadirle o quitarle a un proyecto, sino si puede corregir un verdadero error en su enrolamiento (*enrollment*).

En la esfera judicial no hay duda que una corte puede corregir sus sentencias dentro de la sesión para que verdaderamente expresen lo que se intentó decir o para evitar equivocaciones. Sería absurdo suponer que un proyecto enrolado y firmado apresuradamente por los dos funcionarios que presiden las Cámaras Legislativas no pudiese ser corregido en la misma sesión legislativa, y de ese modo poner en vigor el proyecto realmente aprobado. En efecto, encontramos una corte corrigiendo un proyecto enrolado con el pro·pósito de que concuerde con el proyecto realmente aprobado. *Haney* v. *State*, 34 Ark. 263. Si una corte puede hacer esto, algo sobre lo cual no queremos expresar nuestra opinión, entonces seguramente que tiene que haber alguna forma en que las Cámaras de la Legislatura y el Gobernador, actuando conjuntamente, puedan realizar la corrección. Debe existir por lo menos durante la sesión legislativa, algún modo de hacer que un proyecto de ley erróneamente enrolado exprese la verdad. No tenemos duda alguna de esto. Se reduce solamente a la cuestión de la forma o manera. Puede que la

mejor práctica sea que la Legislatura, por medio de una resolución o de otro modo, pida que el proyecto de ley le sea devuelto. Los casos en sentido contrario solamente deciden que con un propósito legislativo genuino, esto es, con la idea de añadir o quitar, nueva legislación está fuera de su poder. Lo que la Legislatura quería realizar era la corrección de un error en el enrolamiento. Asumiendo que la Legislatura no puede técnicamente pedir la devolución de un proyecto de ley para cualquier fin, entonces se nos obliga llegar a la conclusión que la Legislatura tiene necesariamente que poder hacer otra cosa. Es indiscutible que la Legislatura puede efectivamente estar en sesión y físicamente aprobar resoluciones que tienen necesariamente que ser enroladas. Si éstas llegarán a ser efectivas o no es otro problema. La Legislatura aprobó una resolución concurrente en la cual le dijo al Gobernador oficialmente que se había incurrido en un error en el enrolamiento e informándole asimismo cómo había sido realmente pasado el proyecto. Esto para la acción procedente del Gobernador.

Cuando el Gobernador está considerando un proyecto y se halla ante él para su aprobación o rechazo, la jurisprudencia es clara en el sentido de que él actúa en una capacidad legislativa. Por consiguiente, bajo la teoría de que el proyecto no podía ser devuelto, el Gobernador tenía el poder restante de corregirlo y hacerlo concordar con la verdadera voluntad de la Legislatura. En el caso de *State ex rel. Ball* v. *Hall*, 263 N. W. (Neb. 1935) 400, fué el Gobernador quien actuó para corregir un proyecto enrolado y los hechos son muy similares a los del presente caso, con esta diferencia, que el Gobernador mismo descubrió el error y lo corrigió. Por lo tanto, no vemos objeción para que la Legislatura haga esto en la forma de una resolución bien sea conjunta o concurrente. Aun si el proyecto pudiese ser devuelto, resolvemos que estaba dentro del poder de la Legislatura hacer la corrección por una resolución.

La corte inferior decidió que el haber dejado los apelantes de presentar los recibos mostrando el pago bajo protesta era fatal para su reclamación. El señalamiento de error en este sentido hubiese sido importante solamente en caso de que el proyecto hubiese sido declarado inválido y nosotros estamos resolviendo lo contrario.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Travieso no intervino.

### EN MOCION DE RECONSIDERACION

Mayo 29, 1936

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

 Durante la vista, debido a algo dicho por el letrado, nos forjamos la impresión, quizá erróneamente, de que si el caso se decidía a favor del Gobierno sobre la cuestión de la validez de la ley en controversia, se hacía innecesario discutir la falta de los apelantes de acompañar ciertos recibos con la demanda. Los apelantes ahora prácticamente solicitan de nosotros que tratemos la cuestión y, al considerar el asunto nuevamente, somos del criterio de que éste era una cuestión de derecho adjetivo, que al ser resuelta a favor de El Pueblo, hubiera obviado la necesidad de considerar el caso en sus méritos. Nuestra impresión general está a favor de los apelantes y diremos lacónicamente por qué.

La demanda contenía la siguiente alegación en cada una de sus tres causas de acción:

"... .por lo que verificaron el pago de tales derechos en la expresada suma de ... al demandado bajo protesta en cuanto a $65.00 por cada una de tales licencias, o sea la suma de ... en las cuales condiciones les fueron expedidas las mismas por el demandado a nombre de su dicho agente para el expresado trimestre; y que, de acuerdo con las reglas del demandado, que regían en su Departamento y la ley entonces vigente tal pago bajo protesta se hizo constar en cada una de dichas licencias y éstas fueron recogidas por el demandado al expirar las mismas en junio 30 de 1933 y que, conforme a dichas reglas y ley no se expidió ni entregó a estos demandantes, ni a su dicho agente, por el demandado, recibo alguno por los derechos

así pagados, por lo que no se acompañan a esta demanda los recibos que requiere la ley que regula esta acción, y alegan además los demandantes que dicha suma de . . . . . no le ha sido pagada parcial ni totalmente.''

El Tesorero excepcionó a los hechos alegados. La corte inferior sostuvo la excepción, fundada en que la presentación de los recibos junto con la demanda era imperativa según el artículo 5 de la Ley número 8 de 1927, y que la alegación de los demandantes, supra, era insuficiente, toda vez que no hacía. constar la destrucción de los recibos o la negativa del demandado a suministrar copias de los mismos.

Después de examinar la Ley de 1927, supra, creemos que la intención de la Legislatura fué que los pagos de las contribuciones se hicieran bajo protesta si se iba a iniciar un litigio para recobrar las mismas. La presentación de un recibo, a nuestro modo de ver, es un requisito, cuyo cumplimiento obviaría la necesidad de probar la naturaleza involuntaria del pago, pero su ausencia, cuando existe la alegación de que se hizo el pago bajo protesta y se justifica por qué no se presenta el recibo, nunca debe hacer que la demanda esté sujeta a ser excepcionada. Resolvemos, por tanto, que lo ocurrido aquí equivalió a la presentación de los recibos o que el Tesorero renunció a tal necesidad y que la presentación material de los mismos carecía de importancia.

*Con esta explicación debe declararse sin lugar la moción para reconsiderar.*

El Juez Asociado Sr. Córdova Dávila no intervino.