THE SHELL Co. (P.R.) LTD., demandante y apelante, *v.* RAFAEL SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 7778.—*Sometido:* Junio 21, 1939. *Resuelto:* Noviembre 10, 1939.

*Jaime Sifre, Jr., Horacio Franceschi* y *Rafael Pastor,* abogados de la apelante; *Hon. Procurador General B. Fernández García* y *R. García Cintrón, Subprocurador Auxiliar,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

The Shell Co. (P.R.) Ltd., una sociedad por acciones organizada de acuerdo con las leyes de Inglaterra, autorizada para hacer negocios en Puerto Rico y dedicada a importar en la isla de países extranjeros y a vender en ella petróleo y sus derivados tales como gasolina, *gas oil* y *diesel oil,* demandó en julio 13, 1934, al Tesorero de Puerto Rico en

solicitud de una sentencia que declarara "nula, ineficaz, inválida y anticonstitucional" la Ley núm. 15 de la Primera Legislatura Extraordinaria de la Décimotercera Asamblea Legislativa de 1933, pág. 81, por virtud de la cual se enmendaron las secciones 1 y 2 de la Ley núm. 40 de 1931 para imponer una contribución sobre la gasolina, y que condenara en su consecuencia al demandado a devolverle $46,912.66 que le cobrara a virtud de dicha ley y que la demandante pagara bajo protesta, con intereses y costas.

Sometídole el caso finalmente al par que otros similares iniciados por West India Oil Co. (P.R.) y por The Texas Co. (P.R.) Inc., la Corte de Distrito dictó sentencias en los tres declarando las demandas sin lugar, basándose en una relación de hechos y opinión común a todos que, copiada a la letra en lo pertinente, dice:

"Alegan las demandantes que las contribuciones en cuestión son ilegales, porque la ley a virtud de la cual fueron cobradas, es inconstitucional.

"Allá por el 10 de agosto de 1933 se presentó en la Cámara de Representantes el P. de la C. Núm. 28. Se le introdujeron ciertas enmiendas en la Cámara, pasando luego a la consideración del Senado, donde también fué objeto de otras enmiendas, y luego de ser aprobado en tercera lectura, se devolvió a la Cámara, la cual concurrió en las enmiendas introducidas en el Senado. Inadvertidamente se enroló el proyecto en la forma en que fué originalmente aprobado por la Cámara, es decir, omitiéndose en parte las enmiendas introducidas en el Senado, y con esa omisión lo firmaron los Presidentes de los dos cuerpos legislativos, y fué remitido entonces al Gobernador para su consideración.

"Hallándose el proyecto en manos del Gobernador, advirtió la Asamblea Legislativa la omisión cometida, y para subsanarla, aprobó una Resolución Concurrente, la Núm. 2 de la Décimotercera Legislatura de Puerto Rico, Primera Sesión Extraordinaria. En dicha Resolución la Asamblea declara cuál fué su intención al aprobar el referido proyecto, y expresa la forma en que debe entenderse redactado, de acuerdo con las enmiendas introducidas en una y otra Cámara, y solicita del Gobernador, que al considerar el proyecto lo haga como si el mismo estuviese redactado en la forma en que aparece de la citada Resolución Concurrente.

"El Gobernador aprobó el proyecto en la forma expresada en la Resolución, convirtiéndose *ipso facto* en la Ley Núm. 15 de 24 de agosto de 1933.

"Luego de exponer estos hechos en las tres demandas, alegan las demandantes que la Ley Núm. 15 así enrolada y aprobada está viciada de nulidad, porque infringe las disposiciones del Artículo 34 de la Ley Orgánica, por los siguientes fundamentos:

"I.—Porque el P. de la C. Núm. 28 en la forma en que fué enrolado o registrado en el Libro de Actas, firmado por los Presidentes de cada Cámara y remitido al Gobernador, no fué el mismo proyecto que aprobó la Asamblea Legislativa por haberse omitido en parte las enmiendas introducidas en el Senado, de que hemos hecho referencia.

"II.—Porque el P. de la C. Núm. 28, tal y como en realidad fué aprobado por ambas Cámaras, no fué registrado en el Libro de Actas, ni firmado o certificado por los Presidentes de la Cámara y del Senado, ni remitido al Gobernador para su consideración.

"III.—Porque la aprobación del Gobernador al P. de la C. Núm. 28 recayó por un proyecto que no fué aprobado por la Cámara y el Senado de Puerto Rico.

"IV.—Porque la referida Ley contiene más de un asunto.

"V.—Porque del título del P. de la C. Núm. 28, según fué aprobado por la Cámara y el Senado, no aparece que se impusiera contribución alguna al *Gas Oil* o al *Diesel Oil* que se introduzca, venda, use o consuma en Puerto Rico, por lo que dicha Ley es inválida y nula en cuanto a la contribución sobre dichos productos que pagaron las demandantes bajo protesta, . . .

"VI.—Porque la Resolución Concurrente Núm. 2 antes mencionada es ilegal y nula por los siguientes motivos:

"(a) Porque las resoluciones concurrentes no tienen fuerza de ley y sólo obligan a los miembros de la Asamblea Legislativa.

"(b) Porque al adoptarse dicha Resolución Concurrente la Asamblea Legislativa carecía de jurisdicción sobre el P. de la C. Núm. 28, toda vez que fué adoptada después de haber sido enrolado el proyecto de ley, certificado por los Presidentes de las Cámaras, y remitido al Gobernador de Puerto Rico para su consideración.

"(c) Porque la Legislatura no tiene facultades para conceder ni el Gobernador para aceptar los poderes que le confirió en la ameritada Resolución.

"(d) Porque la Legislatura de Puerto Rico carece de facultades para enmendar una ley mediante resolución.

"(e) Porque la enmienda al título del P. de la C. Núm. 28 se introdujo después de haberse aprobado el proyecto por el Senado

en tercera lectura, y que de ser válida dicha enmienda, la ley sería nula por haberse aprobado con un título en la Cámara y otro en el Senado.

"(f) Porque dicho título contiene pluralidad de asuntos.

"VIII.—Que la Ley Núm. 15 de 1933, como enmendatoria de la Ley Núm. 40 de 1931 no es germana a ésta como tampoco lo son los títulos de una y otra ley.

"Considerando las circunstancias bajo las cuales se aprobó la Ley Núm. 15, como en realidad ocurrieron, y prescindiendo del efecto legal que le imputan las demandantes, las cuestiones suscitadas en estos tres pleitos, se reducen a dos proposiciones, a saber:

"1.—¿Puede la Legislatura, mediante una Resolución Concurrente corregir un error clerical en el enrolamiento de un proyecto de ley mientras se halla en poder del Gobernador para su consideración?

"2.—¿Tiene la Ley Núm. 15, o el título de la misma, pluralidad de objetos o propósitos?

"1.—Sostienen las demandantes que la Ley que firmó el Gobernador no fué la que aprobó la Asamblea Legislativa. Es evidente, que si esta conclusión estuviese sostenida por los hechos, la ley sería completamente nula y más que nula, inexistente. Pero la realidad de los hechos no sostiene esa conclusión. La ley que en definitiva firmó el Gobernador es la misma que ambas Cámaras aprobaron con sus respectivas enmiendas. Fué al enrolar, certificar y firmar el proyecto los Presidentes de las dos Cámaras, que inadvertidamente se omitieron las enmiendas que tanto en el título como en la parte dispositiva se habían introducido al proyecto. Si el Gobernador hubiese firmado el proyecto según le fué sometido originalmente, entonces sí que habría firmado un proyecto distinto del que había sancionado la Asamblea. Por consiguiente, precisaba subsanar el error, y la dificultad estribaba en elegir el remedio. Siguiendo el precedente establecido al aprobarse la Ley que impuso cierta contribución a las 'slot machines', se recurrió a la Resolución Concurrente para expresar la forma en que realmente se había aprobado el proyecto, solicitándose del Gobernador que lo considerase como en realidad había sido aprobado por la Asamblea, o lo que es igual, se conformó el proyecto a la verdad.

"El Tribunal Supremo en el caso de *Agudo* v. *Domenech, Tesorero,* 49 D.P.R. 884, sancionó esta práctica y sostuvo la validez de una ley aprobada en iguales circunstancias, habiéndose ratificado esta doctrina en el caso de *Puerto Rico Distilling Co.* v. *Sancho Bonet, Tesorero,* resuelto el 11 del actual (52 D.P.R. 672).

"Sostienen las demandantes que una de las enmiendas introduci-das en el Senado al devolverse el P. de la C. Núm. 28 a la Cámara, no fué por ésta considerada. Para probar su aserto, recurren a las actas de la Cámara, las cuales guardan absoluto silencio sobre dicha enmienda. Siendo ello así, no apareciendo de las actas afirmativamente que la Cámara hubiere rehusado considerar tal enmienda, se pre-sume que el silencio del acta es motivado por una omisión al anotar las enmiendas, y debe entenderse que el proyecto fué aprobado como afirmativamente lo aseguran ambas Cámaras en la citada Resolución Concurrente. *Connor* v. *Blackwood,* 2 S.W. (2d) 44; *Hollingsworth* v. *Thompson,* 40 A.S.R. 220; y *School District No. 11* v. *Chapman,* 152 Fed. 887.

"2.—La Ley Núm. 15 de 24 de agosto de 1933 ((2) pág. 81), en-mienda las secciones 1 y 2 de la Ley Núm. 40, aprobada el 24 de abril de 1931 (pág. 361), que impone una contribución de 7 centavos por cada galón de gasolina que se introduzca, fabrique, venda o consuma en Puerto Rico. Adiciona a dicha sección un arbitrio de 4 centavos por cada galón de *Gas Oil* y *Diesel Oil,* y dispone, además, esta Ley que cualquier mezcla o combinación contentiva de gasolina estará comprendida dentro del alcance del término 'gasolina', según se usa en la referida Ley. Continúan sus demás secciones creando un fondo con el producto de estos arbitrios, y determinando las distintas aten-ciones públicas que habrán de atenderse con el fondo así creado.

"El título de la Ley es muy extenso, por cuya razón no lo trans-cribimos, pero en síntesis, podemos decir que comprende las mate-rias mencionadas en el párrafo precedente.

"En el caso de *Ule* v. *State,* 101 A.L.R. 903, resuelto por la Corte Suprema de Indiana el 20 de febrero de 1935, se hace un estudio bas-tante extenso de lo que constituye pluralidad de propósitos, tanto en el cuerpo como en el título de una ley. Se considera en dicho caso una ley cuyo título dice así:

" 'Ley disponiendo el registro y expedición de licencias para ve-hículos de motor, motocicletas, tractores, "trailers" y "semi-trailers", para reglamentar el uso y operación de los mismos en los caminos pú-blicos, definiendo los *chauffeurs* y proveyendo el examen y expedi-ción de licencias, la transferencia de la propiedad, exigiendo llevar ciertos records de los vehículos de motor, motocicletas y camiones de motor, a los cuales se les suministre garage o reparaciones, y creando en tal caso una preferencia (lien) sobre los mismos, y prescribiendo penalidades por la violación de dicha ley.'

"La Constitución de aquel Estado contiene una disposición seme-jante a la contenida en el Art. 34 de nuestra Carta Orgánica, que dice así:

" 'Cada Ley comprenderá un solo propósito y cualesquiera otras materias relacionadas con el mismo.'

"Alegaban las apelantes en dicho caso que la Ley impugnada infringía el transcrito precepto constitucional, porque el título contenía dos preceptos distintos: (a) la reglamentación de los vehículos de motor en los caminos públicos; y (b) la concesión de preferencias (liens) en ciertos casos.

"Considerando la cuestión suscitada por el apelante, resolvió dicha Corte:

" 'Es casi innecesario sugerir que aquellas materias que ordinariamente no parecen tener características o peculiaridades comunes, pueden, no obstante, a los efectos legislativos ser agrupadas y tratadas como si fueran una sola materia. . .

" 'Si desde el punto de vista legislativo existe una base razonable para agrupar varias materias en una misma ley, esta Corte no puede decir que tales materias constituyen más de un propósito.

" 'El propósito o sujeto de la ley en cuestión es "vehículos de motor." El propósito de una ley debe ser razonablemente específico, de manera que indique cualquier ramo especial de legislación como un encabezamiento bajo el cual puedan encontrarse disposiciones especiales. La generalidad de un título no es defectuosa o censurable, a menos que abarque legislación incongruente que razonablemente interpretada no demuestre una necesaria o propia relación entre sí.

. . . . . . . . .

" 'Este precepto constitucional debe ser liberalmente interpretado. No debe dársele una interpretación innecesariamente estricta que obstaculice los beneficiosos efectos de la legislación. Cooley on Constitutional Limitations (7th Ed.) página 209; *Moore-Mansfield Constr. Co.* v. *Indianapolis, etc. R. Co.*, 179 Ind. 356, 101 N. E. 296, 300, 44 L.R.A. (N. S.) 816, Ann. Cas. 1915D 917.'

" 'Otros propósitos del precepto constitucional, como se dijo en el caso de *Moore-Mansfield Constr. Co.* v. *Indianapolis, etc. R. Co.*, supra, son: 1.—Evitar legislación conocida por *log-rolling;* 2.—Evitar sorpresa o fraude en la legislatura por medio de disposiciones en proyectos cuyos títulos no las indiquen; y 3.—Advertir al pueblo del propósito legislativo bajo consideración.

" 'Ninguno de estos reparos puede oponerse en el presente caso. El título es amplio y una lectura del mismo revela lo que significa e incluye. No puede decirse que no existe relación entre las materias comprendidas en la Ley. Dichas materias se relacionan con vehículos de motor, y creemos desde el punto de vista legislativo, que existe

una base razonable para agruparlas. No creemos que existe duplicidad en el título ni en la Ley misma.'

"Este razonamiento es igualmente aplicabe a la Ley Núm. 15 de 1933. Su objeto principal es imponer un arbitrio a la gasolina y productos que la contengan, y al *Gas Oil* y *Diesel Oil*. Relacionados con este objeto o propósito principal están la forma en que se ha de imponer y cobrar dicho arbitrio, la creación de un fondo con el producto del mismo, y las distintas atenciones públicas a las cuales habrá de destinarse el dinero así obtenido.

"Además, si una ley se presume constitucional mientras no se declare judicialmente lo contrario; si en caso de duda sobre la constitucionalidad de una ley debe sostenerse su validez, ¿no es acaso razonable aplicar estos principios cuando haya duda sobre la existencia de pluralidad de propósitos y sostener, como en los demás casos, la validez de la ley?

"Al considerar la segunda proposición que acabamos de discutir, pudimos descansar nuestra resolución en el caso de *Puerto Rico Distilling Co.* v. *Sancho Bonet, Tesorero,* supra, donde el Tribunal Supremo sostuvo que no existe pluralidad de propósitos en el título ni en el cuerpo de esta Ley; pero cuando dicha opinión llegó a nuestras manos ya habíamos hecho el estudio del caso, y habiéndose radicado por una y otra parte cuidadosos y extensos alegatos en apoyo de sus respectivas posiciones, nos creímos obligados a demostrar a las partes que sus alegatos habían sido considerados y estudiados por el Juez a quien sometieron su contienda.

"La Ley Núm. 15 de 1933, como creemos haber demostrado, no adolece de los defectos que se le imputan. Es válida, y válida también es la contribución que las demandantes pagaron bajo protesta. Por consiguiente, procede en cada uno de los tres casos que consideramos, dictar sentencia desestimando la demanda, con costas a la demandante."

Las tres compañías demandantes apelaron para ante este tribunal de las sentencias dictadas en su contra por la corte de distrito, pero tanto la West India Oil Co. (P.R.) como la Texas Co. (P.R.) Inc. desistieron de sus recursos por haber llegado a un entendido con el demandado en cuanto à la renuncia por su parte de las costas del litigio cuyo pago se impuso a las demandantes y esta Corte Suprema las tuvo por desistidas por resoluciones de abril 5, 1938.

Sólo la Shell Co. (P.R.) Ltd. apeló, señalando en su alegato la comisión de ocho errores que extensamente discute, y que extensamente también impugna en el suyo el Tesorero.

Hemos estudiado los autos y los alegatos y a nuestro juicio el recurso establecido no procede. La ley de que se trata, todas las circunstancias consideradas, es constitucional. Y como las razones que para sostener su fallo expusiera en su opinión la corte sentenciadora lo fueron correctamente y de modo convincente, no será necesario que las expongamos de nuevo por nosotros mismos.

*Debe declararse el recurso sin lugar y confirmarse la sentencia recurrida.*

El Juez Asociado Sr. De Jesús no intervino.