The Shell Company (P. R.) Ltd., demandante y apelante, *v*. Rafael Buscaglia, en su carácter de Tesorero de Puerto Rico, demandado y apelado.

Núm. 8984.—*Sometido:* Marzo 8, 1945. *Resuelto:* Mayo 28, 1945.

*Sifre, Franceschi & Sifre* y *Rafael Pastor,* abogados de la apelante; *Hon. Procurador General Interino Jesús A. González* y *G. Benítez Gautier, Procurador General Auxiliar,* abogados del apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Entre septiembre 24 de 1931 y abril 10 de 1932 The Shell Company (P. R.) Ltd., la cual en adelante llamaremos la compañía, introdujo en Puerto Rico más de millón y medio de galones de aceite diesel. La Ley núm. 15 aprobada el 24 de agosto de 1933 (Leyes de 1933, pág. 81) enmendando la Ley núm. 40 de 1931 (pág. 361) gravó por primera vez y prospectivamente el aceite diesel imponiéndole una contribución de 4 centavos por cada galón que se "introduzca, fabrique, use o consuma o que de otro modo se disponga de ellos para el consumo en Puerto Rico."

Cuando comenzó a regir esta ley, la compañía aún tenía en sus tanques cierta cantidad de aceite sobre la cual pagó bajo protesta la suma de $46,912.66 y reclamó judicialmente.

Este pleito fué fallado a favor del Gobierno, *The Shell Co. (P. R.) Ltd.* v. *Sancho Bonet, Tesorero,* 55 D.P.R. 576, pero en el mismo no estaban envueltas ningunas de las cuestiones que ahora se plantean.

Después de pagada la contribución a que nos hemos referido, el Tesorero de Puerto Rico con la aprobación del Auditor y del Gobernador, reintegró a la compañía la cantidad de $14,088.57 de los $46,912.66 ya pagados. Este reintegro se debió al hecho de que la compañía había reexportado distintas cantidades de aceite para su venta o refinación fuera de Puerto Rico. Es un hecho admitido, además, que sobre el aceite así refinado al ser traído de nuevo a Puerto Rico se pagó la contribución correspondiente y en cuanto a aquel que se vendió fuera de Puerto Rico que la compañía no cargó suma alguna equivalente a la contribución al precio de venta.

Al aprobarse la Ley núm. 217 de mayo 12 de 1942 ((1) pág. 1151) a virtud de la cual la Legislatura "reimpuso" con carácter retroactivo al año 1931, las contribuciones sobre gasolina y aceite diesel, el Tesorero exigió de la compañía el pago de los $14,088.57 que le habían sido reembolsados, más $704.43 en concepto de recargos y $8,616.33 de intereses y entonces la compañía pagó estas sumas bajo protesta y radicó demanda para su recobro,[1] la cual en cuanto a los $14,088.57 reclamados en la segunda causa de acción fué declarada sin lugar. La compañía apeló.

La corte inferior resolvió:

1, que la compañía había "usado" el aceite diesel en Puerto Rico porque para reexportarlo "era necesario que se extrajese de los tanques donde estaba almacenado y esa extracción constituía un *uso* del aceite en Puerto Rico, por cuyo

---

[1] También se reclamó en otra causa de acción de la demanda la devolución de contribuciones pagadas bajo protesta correspondientes a aceite diesel importado por la compañía y vendido y usado antes de la vigencia de la Ley núm. 15 de 1933, pero como la corte inferior declaró con lugar dicha causa de acción y el Tesorero no apeló, esa cuestión no está envuelta en el presente recurso.

privilegio debía pagarse la contribución tan pronto el aceite fuera extraído del depósito"; 2, que la práctica administrativa (que prevaleció durante más de diez años) al interpretar la Ley núm. 15 de 1933 en el sentido de que dicho estatuto no gravaba el aceite cuando es introducido en Puerto Rico para ser posteriormente reexportado , es contraria a dicha ley y además, que de acuerdo con la Ley núm. 217 de 1942 la Legislatura tenía poder para imponer con carácter retroactivo . . . . a un período posterior al 24 de agosto de 1933 cuando ya se gravaba el privilegio de *usar* el aceite. . . " ya que dicha ley " . . . no privó a la demandante de ningún *vested right* . . . y estaba obligada moral y legalmente a pagar las contribuciones que ahora reclama y a devolver los reintegros hechos . . . " y 3ro., que la Ley de 12 de febrero de 1904 (pág. 167) no autorizaba al Tesorero a devolver las contribuciones objeto de este litigio porque "La redacción de dicho estatuto al hablar de una *revisión* y *corrección* de los recibos de contribuciones parece referirse únicamente a contribuciones sobre la propiedad y no a impuestos de rentas internas; pero en el supuesto no admitido que dicha ley sea aplicable a toda clase de contribuciones, su texto habla únicamente de contribuciones cobradas en exceso o impropiamente y ya hemos visto que los arbitrios que ahora se discuten fueron propia y legalmente impuestos y cobrados."

De acuerdo con nuestra decisión en el caso de *Pyramid Products, Inc.* v. *Buscaglia,* 64 D.P.R. 828, las conclusiones de la corte inferior son erróneas. La única diferencia entre dicho caso y el de autos es que allí estaba envuelto el impuesto de siete centavos sobre la gasolina y en éste el de cuatro centavos sobre el aceite diesel y que si bien en cuanto a la gasolina la Ley núm. 15 de 1933 impone la contribución por cada galón "que se introduzca, fabrique, venda o consuma o que de otro modo se disponga de ella para el consumo en Puerto Rico," en cuanto al aceite en lugar de la

palabra "venda" se empleó la palabra "use". Expresamente resolvimos en dicho caso que " . . . La frase 'que de otro modo se disponga' después de los verbos 'introduzca, fabrique, venda o consuma', indica otra forma de disponer del artículo, como por ejemplo, traspasar, *usar* o donar. Y si la gasolina de que de otro modo se dispone, o sea mediante traspaso, uso o donación, solamente es tributable cuando de ella se dispone en cualquiera de esas formas para el consumo en Puerto Rico, no hay motivo para creer que fué la intención de la Asamblea Legislativa no imponer a la venta, que no es otra cosa que una forma de disponer, la misma condición de que para que sea tributable debe hacerse para el consumo en Puerto Rico. Y si la venta, *uso*, consumo, traspaso o donación de la gasolina sólo son tributables cuando son para el consumo en Puerto Rico, tenemos que concluir que la intención del legislador no fué gravar la introducción de la gasolina cuando se hace para otros fines que no sea disponer de ella en cualquiera de las formas indicadas 'para el consumo en Puerto Rico.' " (Bastardillas nuestras.)

El caso de *Edelman* v. *Boeing Air Transport,* 289 U. S. 249, apoyo principal de la corte inferior para sostener que la mera extracción del aceite de los tanques para su reexportación constituyó un uso del mismo por la compañía, es fácilmente distinguible. En dicho caso se hizo constar expresamente que se estaba siguiendo la interpretación que la práctica administrativa había dado al estatuto en cuanto a que la contribución impuesta al "uso" de gasolina en el Estado de Wyoming incluía el hecho de sacarla de los tanques de almacenaje en un aeropuerto y echarla en los tanques de los aviones de la compañía Boeing. Dijo la corte, limitando el alcance de su decisión: "La controversia se limita a la única cuestión levantada por las alegaciones, si imponer contribución a la gasolina que la demandada saca de sus almacenes y la usa para 'llenar' sus aeroplanos impone una carga

inconstitucional sobre el comercio entre los Estados. Por tanto limitamos nuestra decisión a esa cuestión." Y resolvió que esa interpretación administrativa no violaba ningún derecho constitucional del demandante relacionado con dicho comercio, diciendo a las págs. 251, 252 y 253:

"*Según el estatuto ha sido interpretado y aplicado administrativamente,* la contribución no se impone al *consumirse* la gasolina para generar fuerza motriz para los aviones del demandado. La contribución se aplica a la gasolina almacenada según se extraiga de los tanques de almacenaje en el aeropuerto y puesta en los aeroplanos. . . La gasolina almacenada se considera 'usada' dentro del Estado y por tanto sujeta a la contribución cuando es extraída de los tanques.

"Un Estado puede válidamente imponer una contribución al 'uso' que se le dé a la gasolina al removerla de almacenaje dentro del Estado y ponerla en los tanques de los aeroplanos, no obstante que finalmente su función sea la de generar fuerza motriz para llevar a cabo comercio interestatal. Tal contribución no puede distinguirse de aquélla considerada y declarada válida en *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace,* supra. Allí se señaló que 'no puede haber objeción válida a la imposición de contribuciones sobre el ejercicio de cualquier derecho o poder incidental a. . . propiedad de la gasolina, que dista mucho de ser una contribución impuesta directamente sobre su uso en comercio interestatal, cuya imposición se prohibió en *Helson* v. *Kentucky,* 279 U. S. 245. Como el ejercicio de los poderes sobre los cuales se impone la contribución, o sea el almacenaje y la remoción de la gasolina de dicho almacenaje, se completó antes de comenzar el comercio interestatal, se resolvió que el peso de la contribución era demasiado indirecto y remoto de la función de comercio interestatal para infringir las limitaciones constitucionales.

"No obstante el hecho que la ley tal como fué aplicada es idéntica en su operación a aquélla sostenida en *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace,* supra, arguye el demandado que, tal como está redactada la ley, la contribución se impone sobre el consumo de la gasolina al impulsar sus aeroplanos en comercio interestatal, y que como tal ella no es válida de acuerdo con *Helson* v. *Kentucky,* supra. En dicho caso una ley de Kentucky tributando el uso de gasolina se aplicó a la gasolina comprada y puesta en los tanques de un barco de paso fuera del Estado para usarse en hacerlo funcionar en comercio interestatal. Se resolvió que la contribución, la cual se impuso únicamente con respecto a la gasolina consumida mientras el barco es-

taba dentro de los límites del Estado, no era válida por ser, en su efecto, una contribución directa sobre el privilegio de llevar a cabo comercio interestatal.

"Pero los funcionarios de Wyoming, encargados de la administración de la ley que impone la contribución, *no le están dando la aplicación que se le diera a aquella contribución* en *Helson v. Kentucky,* supra, *ni hay nada que sugiera que así lo harán.* Todo lo que han hecho o han amenazado hacer, *bajo su interpretación de la ley,* no infringe ningún derecho constitucional del demandante. Bajo las circunstancias concurrentes, no se ha presentado ningún caso, tanto por las alegaciones o por la prueba, que requiera a una corte federal de equidad el resolver *sobre la corrección de alguna otra interpretación la cual puede ser que nunca sea adoptada por los funcionarios administrativos o por las cortes del Estado."* (Bastardillas nuestras.)

El estatuto interpretado en el caso de *Nashville, Chattanooga & St. Louis Railway Co.* v. *Wallace,* 288 U. S. 249, citado en el de *Elderman,* supra, disponía que: "La contribución impuesta por esta ley se aplica a personas, firmas o corporaciones, comerciantes o distribuidores, que almacenen cualquiera de los productos mencionados en esta ley (gasolina) y que los distribuyan o que permitan que sean sacados de almacenaje, aunque tal extracción sea para la venta u otro uso," y la corte en dicho caso dijo: "El almacenaje de la gasolina y su extracción del mismo dentro del Estado para su uso o venta son, como ha resuelto la Corte Suprema del Estado, los hechos que, de acuerdo con los términos del estatuto, lo hacen entrar en vigor."

Como puede verse tanto por el lenguaje usado en las leyes envueltas en estos casos, como por la interpretación y aplicación administrativas que a ellas dieron los funcionarios llamados a ponerlas en vigor, la contribución fué sostenida como válida, 1, por ser una sobre "almacenaje y extracción" y 2, por no imponer carga alguna al comercio interestatal.

Por el contrario en Puerto Rico el lenguaje usado en la ley imponiendo arbitrios sobre la gasolina y el aceite, la historia legislativa de dicha ley y su interpretación administra-

tiva y aun judicial,([2]) han sido en el sentido de que la palabra "uso" no se refiere al almacenaje y extracción en sí de dichos productos por el importador y menos aún cuando se han extraído de los tanques con el fin de reexportarlos para su venta fuera de Puerto Rico sin incluir en su precio de venta el importe de la contribución, o para refinarlos y al traerlos de nuevo a la isla han pagado el importe correspondiente.

El uso que contempla nuestra ley es algo más que la mera extracción del aceite de los tanques de almacenaje con el fin de reexportarlos para su venta o refinación fuera de Puerto Rico. No hay uso de clase alguna "para el consumo en Puerto Rico," en esa operación. Como hemos resuelto en el caso de *P. R. Ilustrado* v. *Buscaglia*, 64 D.P.R. 914, interpretando la sección 16 *a* de la Ley de Rentas Internas que impone una contribución sobre ciertos artículos "cuando ... sean fabricados, producidos o introducidos en Puerto Rico para uso o consumo doméstico sin fines comerciales," la palabra *uso* en esta ley, tiene una raigambre económica: contempla beneficio o satisfacción que proviene cuando el artículo se emplea para los fines con que se introdujo."

Consideramos innecesario repetir aquí lo que dijimos en el caso de la *Pyramid*, supra, en cuanto al alcance de la Ley núm. 217 de 1942, la validez de la práctica administrativa establecida por anteriores Tesoreros y la facultad de los funcionarios ejecutivos, Auditor y Gobernador de Puerto Rico, para autorizar la devolución de las contribuciones cobradas indebidamente de acuerdo con la Ley de 12 de febrero de 1904 (Sec. 2365, Est. Rev., Ed. 1911, pág. 480).

*Debe modificarse la sentencia apelada en el sentido de declarar con lugar la segunda causa de acción en su totali-*

---

([2])**Factores** son éstos que deben ser tomados en consideración aun para determinar cuestiones jurisdiccionales. *Cf. The Hoover Company* v. *Conway P. Coe*, resuelto por la Corte Suprema de los Estados Unidos en 30 de abril de 1945.

*dad y en su consecuencia ordenar también al Tesorero de-mandado la devolución a la demandante de los reintegros as-cendentes a $14,088.57, con sus intereses.*

El Juez Asociado Sr. De Jesús no intervino.